JEWELL M. BURGDORF, Respondent, *v.* BENJAMIN F. ODELL, Appellant.

*N. Y. Supreme Court, Fifth Department, General Term, June 22, 1889.*

1. *Contract. When completed.*—An agreement substantially to the effect that the defendant should go with plaintiff's agent to select the goods required, and would pay for such as he selected, where he never selected any goods, nor any were delivered to him, does not constitute a contract of sale between the parties.

2. *Same. Agent.*—And his expression "all right," with which he responded to subsequent information that another person had gone with plaintiff to make such selection, cannot be construed into an appointment of such person as his agent to select the goods for him.

3. *Same. Ratification.*—A contract void under the statute of frauds cannot be ratified.

4. *Evidence. Insolvency.*—Evidence of the insolvency of a deceased person and his estate, is inadmissible as tending to show that credit was given to another party rather than to the estate of the deceased.

Appeal from judgment of County Court entered on a verdict of an appeal from justice's court for a new trial, and from an order denying a motion for a new trial.

*E. Hicks*, for appellant.

*C. B. Laham*, for respondent.

DWIGHT, J.—The action was for goods furnished and services rendered by the plaintiff, as an undertaker, in the burial of one Biddlecom, at the alleged request of the defendant and upon his alleged parol promise to pay for the same. The question chiefly litigated was whether the credit was given to the defendant or to the widow (or the estate) of the deceased. If the latter, then the alleged contract of the defendant was within the statute of frauds.

One Boyden was the plaintiff's agent, carrying on a branch of his business at Phelps, near which village Biddlecom lived, while the plaintiff's place of business was at Clifton Springs, three miles distant.

A few minutes after Biddlecom's death, on the 18th of July, Boyden was sent for to come to the house; he went and proceeded to lay out the body, and sent a message to the plaintiff to come at once and bring a freezer and ice. The plaintiff did so, and continued the preparation of the body for burial.

The next morning (the 19th) Boyden saw the defendant in front of his store, in Phelps, and had a conversation about the funeral expenses. Boyden testifies : " I told him I had come to see who was responsible for the burial, as Burgdorf was too poor to lose it. He said he supposed he would have to do that, and that he wanted something neat and good, but not expensive, and that he would go with him and pick them out. * * * I immediately drove up to Biddlecom's and returned within an hour to defendant's store and told him that Mrs. Biddlecom had gone with Burgdorf to Clifton to select a casket. He said, ' all right.' "

The defendant and his witnesses contradicted this version of the conversations, and testified in effect that the defendant disclaimed all responsibility for the funeral, and declined to assume any of the expenses. In the meantime the plaintiff took Mrs. Biddlecom to his wareroom, at Clifton, where she selected a casket and shroud, and the plaintiff made out and handed her a bill for those articles amounting to sixty dollars.

Testimony on the part of the plaintiff is to the effect that before the goods were actually furnished and the plaintiff's services rendered at the funeral, Boyden had reported to the plaintiff his version of the conversation he had had with the defendant. At the funeral the plaintiff met the defendant, with whom he had never spoken before, and testifies that he said to him : " Mr. Boyden says you will pay these

funeral expenses," and that the defendant answered : " I suppose that will fall on me to pay." Mrs. Biddlecom testifies that the defendent told her at the funeral, in effect that he had made the matter of expenses all right with Mr. Boyden. All of which the defendant contradicts.

The county judge submitted the case to the jury mainly upon the question whether or not the contract was made between Boyden, the plaintiff's agent and the defendant, as testified to by the former. That is spoken of throughout the charge as the contract upon which the plaintiff relies, and the evidence of what took place at the funeral is referred to only as tending to corroborate the testimony of Boyden. The jury were instructed, in substance, that if they find that contract substantiated by a preponderance of evidence they will find a verdict for the plaintiff. At the close of the charge the defendant's counsel requested the court to charge :

" That there was no sufficient contract between Mr. Odell and Mr. Boyden on the morning of the nineteenth that would take the case out of the statute of frauds or make Mr. Odell liable ;

" That if the jury found there yet remained something for Odell to do to complete the contract, it was void ;

" That it being conceded that Odell was to go with Boyden and select the goods, and not doing so, the contract failed and the plaintiff cannot recover."

" The court declined to so charge and the defendant excepted." The court then said : " I should so charge were it not for the items of evidence introduced subsequently as to the ratification of the contract. I should charge as you request were it not for the item of evidence of subsequent ratification, assuming that there was a ratification." To which defendant also excepted.

" The defendant, also, excepted to the charge instructing the jury that there was a contract in front of the store made between Burgdorf and Odell."

We think these exceptions fairly point to error in the submission of the case to the jury. It is plain that, giving full effect to the testimony of Boyden, no contract for the sale of goods was concluded between him and the defendant. The agreement was only that the defendant should go with Boyden and select the goods required and would pay for such as he selected. He never did select any goods nor were any delivered to him.

His expression "all right," with which he responded to Boyden's information, communicated later, that Mrs. Biddlecom had gone with the plaintiff to select a casket, cannot be construed into an appointment of the widow as his agent to select the goods for him. The transaction between the widow and the plaintiff was entirely independent of what had passed between Boyden and the defendant, which had never been communicated to either of them, when the widow made the selection of the goods, and the bill was presented to her. So that taking the testimony of Boyden as correctly representing all that passed between him and the defendant, there was in it no evidence of a contract which bound the latter to pay for the goods furnished by the plaintiff to Mrs. Biddlecom, and this was one of the instructions asked for by the defendant, and refused. The defendant was also entitled to the instruction asked for to the effect that if anything remained to be done by him to conclude the contract—and it was conceded that he was to go and select the goods and did not do so—then the contract failed. It is true that counsel added to the last branch of the request the words "and the plaintiff cannot recover." But we think this was fairly to be construed as intending "cannot recover thereupon," that is upon the contract testified to by Boyden. For, it is to be observed, that was the only contract the evidence of which had been submitted to the jury. The jury had been instructed, in substance, that if they believed the testimony of Boyden, as substantiated or corroborated by the other evidence in

the case, then a contract had been made out upon which the plaintiff was entitled to recover. This we have held to be error, and we think the exception to the refusal of the court to charge as requested, pointed to that error with sufficient distinctness to entitle the defendant to its correction before the case was finally submitted. It does not seem to us to have been corrected by the reference made by the court, in its final remark, to the evidence of a "ratification of the contract." What contract was intended? Apparently the contract with Boyden, since that was the only contract which had been referred to. But there was no evidence of a ratification of that contract; there could have been none, because so far as there was any contract between them, it was void by the statute of frauds.

The ratification for which the respondent here contends was a ratification of the act of the widow in making a selection of goods as the agent of the defendant. But by the last remark of the court the jury was left to suppose that there was some evidence in the case, not pointed out, which might be taken as evidence of a ratification or validation of the contract between Boyden and the defendant; and to this instruction the defendant excepted.

We think there was error in the charge, and in the refusal to charge, which were excepted to in such manner as to present them for review.

There was error also in the admission of evidence of the reputed insolvency of Biddlecom and his estate. The case in that respect, seems to be clearly within the authority of Green *v.* Disbrow (56 N. Y. 334) and Denman *v.* Campbell (7 Hun, 88). The evidence was doubtless received—and was probably considered by the jury—as tending to show that the credit was given to the defendant rather than to the estate of the deceased.

In the former of the cases cited, CHURCH, Ch. J., says of evidence received for a similar purpose : " It was not legiti-

mate evidence, and had no direct bearing upon the question. At most, it only tended to create a moral probability that the plaintiff would have been more likely to give credit to the father, but it is too uncertain and remote to afford any reasonable presumption of the principal fact. No fair inference can be drawn that one person received credit instead of another because he happened to have the most property."

For the errors mentioned, the judgment and order should be reversed and a new trial granted.

All concur.

Judgment and order reversed and a new trial granted, with costs to abide the event.